A96A1120. CODY v. THE STATE.
A96A1121. SIMPSON v. THE STATE.
(474 SE2d 669)

Andrews, Judge.

Derek Cody and Tommy Bernard Simpson were jointly indicted and jointly tried for trafficking in cocaine in violation of OCGA § 16-13-31. They appeal from the judgments entered on jury verdicts finding each of them guilty as charged.

The State presented the following evidence: An informant told Gwinnett County police that he knew of two men interested in buying half of a kilogram of cocaine. Based on this information, a Gwinnett County narcotics detective posed undercover as a drug dealer in a so-called "reverse sting" operation. The informant arranged a meeting between the two men and the undercover detective and informed the detective he would accompany the men to the meeting and that they would arrive in a black Mercedes automobile. The undercover detective waited at the pre-arranged time and location in a parking lot adjacent to Gwinnett Place Mall. Other police officers in unmarked vehicles conducted surveillance of the area, operated two cameras to videotape the drug buy, and operated a recording device capable of receiving an audio transmission of the buy from a wireless transmitter concealed on the detective.

The detective observed the informant and Simpson walk toward him across the parking lot. Simpson was carrying a bag containing $9,000 in cash and told the detective he was ready to do business. Simpson handed the bag to the informant, who handed it to the detective. After the detective counted the money, he used a cellular phone to call another undercover officer posing as the detective's accomplice, who brought the cocaine to the scene in an unmarked car. The informant asked Simpson if he wanted his friend to see the cocaine, and Simpson replied that was unnecessary because his friend trusted him. The detective gave the cocaine to Simpson, who inspected it by tasting and weighing it. Simpson was thereafter arrested at the scene and charged with trafficking in cocaine. A video and audio tape of the drug buy taken by police was introduced into evidence. The State also produced a statement given to police by Simpson in which he admitted he met with the undercover detective

to purchase cocaine but stated he only expected to purchase about four ounces of cocaine. Based on his experience in investigating drug sales, the narcotics detective testified that half of a kilogram of cocaine would sell for between $9,000 and $11,000. The powdery substance sold to Simpson as cocaine, which police had obtained from a previous drug arrest, was weighed and tested at the State Crime Lab and proved to have a total weight of 593 grams, 85 percent of which was cocaine.

Simpson testified at trial that the informant was a friend helping him organize a business, that the informant set up and conducted the drug buy and tricked him into being at the scene of the buy, and that he played along with the drug deal out of fear for his own safety but had nothing to do with buying the cocaine. Simpson claimed the $9,000 used to purchase the cocaine was money he gave to the informant to open up a business account for him and that the informant borrowed the money from him to purchase the cocaine.

The State presented additional evidence related to Cody's involvement in the cocaine buy. One of the police officers conducting surveillance at the scene of the drug buy testified he saw a black Mercedes in the parking lot and watched it at the time of the drug buy because the informant indicated the buyers would be in a black Mercedes. The officer testified that, while the drug buy was in progress, he observed the Mercedes move twice, once to a position closer to the buy where the driver's side of the Mercedes had a direct line of sight to the buy and once when the officers moved in to arrest Simpson. Because of information provided by the informant about the buyers' use of a black Mercedes and the suspicious location and movement of the Mercedes during the drug buy, the officers stopped the Mercedes and arrested Cody, who was the driver and sole occupant of the car. About $5,000 in cash was found in the car. Cody gave a statement to police which was introduced into evidence. He stated he followed Simpson and the informant to Gwinnett Place Mall in his sister's black Mercedes, but he did not have anything to do with the drug buy and did not think Simpson would get him into any trouble. He initially denied having any knowledge of the cash found in the car. Later, he admitted he knew about the cash in the car but claimed it was money given to him by friends so he could buy and re-sell some clothes for profit. When asked how long he had been sitting in the Mercedes in the parking lot, Cody at first responded he did not know, then later stated he sat in the Mercedes for a couple of hours but did not know about the drug buy. Cody did not testify at the trial.

*Case No. A96A1120*

1. Cody claims the trial court erroneously denied his motion for a

directed verdict acquitting him of the charged offense. Cody was charged with trafficking in cocaine in violation of OCGA § 16-13-31 under an indictment alleging he was knowingly in possession of more than twenty-eight grams of a mixture containing ten percent or more of cocaine. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. *Harvey v. State*, 212 Ga. App. 632, 634 (442 SE2d 478) (1994).

Viewing the evidence on appeal, as we must, in the light most favorable to the jury's determination of guilt, we conclude the evidence was sufficient under the *Jackson v. Virginia* standard to find Cody constructively possessed the cocaine and was guilty as a party to trafficking in cocaine by intentionally aiding and abetting in the commission of the crime. OCGA § 16-2-20. Of course, a finding that Cody constructively possessed the cocaine must be based on more than his mere spatial proximity to the cocaine, and evidence of Cody's mere presence near the scene of the drug buy, without more to show his participation, would be insufficient to support his conviction. *Harvey v. State,* supra at 634. In the present case, there was evidence which supported the jury's conclusion that Cody participated with Simpson in the purchase of the cocaine. Simpson's statement during the drug buy that it was unnecessary for his friend to inspect the cocaine supported the informant's report to the police that two men were involved in the drug buy. Cody's presence near the drug buy at the pre-arranged time and location in a black Mercedes automobile further confirmed the informant's report that the men would arrive at a certain time and place in a black Mercedes. The suspicious movement of the Mercedes by Cody during the drug buy to a position with a better view of the buy was evidence that Cody was acting in concert with Simpson in the purchase of the cocaine. The presence of a large amount of cash in the Mercedes along with Cody's inconsistent statements to the police about his knowledge of the cash and the amount of time he was sitting in the car near the location of the drug buy provided further evidence of his participation in the crime.

The trial court correctly denied Cody's motion for a directed verdict of acquittal.

2. Cody claims the trial court erroneously admitted his statement to the police over his objection that it was not voluntarily given.

The record shows that, prior to questioning Cody at the scene of his arrest, police informed him of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Cody waived

these rights and agreed to answer questions and never invoked his *Miranda* rights at any time during the questioning. Cody does not claim otherwise but asserts the statement he gave was involuntary because at one point during the questioning he told the detective a light was making him dizzy. The record reflects that, when Cody said he was dizzy, the detective asked him to sit down, Cody did so, the detective then asked more questions, and Cody gave coherent answers without further complaint. There is no evidence that any part of Cody's statement was coerced by police or was involuntary. Compare *Colorado v. Connelly*, 479 U. S. 157 (107 SC 515, 93 LE2d 473) (1986).

The trial court properly overruled Cody's objection and admitted the statement.

3. There is no merit to Cody's claim that the trial court erred in its jury charge as to his election not to testify. Moreover, after the trial court asked if there were any exceptions to its charge, Cody's counsel waived any objections by stating he had none and by failing to reserve the right to raise objections to the charge on motion for a new trial or on appeal. *Lewis v. State*, 215 Ga. App. 161, 164 (450 SE2d 448) (1994).

4. Cody claims the trial court erroneously denied his motion attacking the constitutionality of OCGA § 16-13-30 (d) as applied to him in this case.

Pursuant to OCGA § 16-13-30 (d), which mandates imposition of a life sentence for a second conviction for the sale of or possession with intent to distribute a controlled substance, the trial court sentenced Cody to life imprisonment after considering evidence that he had previously been convicted of possession of cocaine with intent to distribute. Cody's conviction for the more serious offense of trafficking in cocaine under OCGA § 16-13-31 was sufficient in conjunction with his previous conviction for possession of cocaine with intent to distribute under OCGA § 16-13-30 (b) to trigger the mandatory life sentence provisions of OCGA § 16-13-30 (d). See *Gilbert v. State*, 208 Ga. App. 258, 259-262 (430 SE2d 391) (1993).

In imposing a life sentence, the trial court denied Cody's motion contending the life sentence provisions of OCGA § 16-13-30 (d) are unconstitutional as applied to him in this case because Gwinnett County authorities selectively applied the statute in a racially discriminatory manner against black males. Cody, who is a black male, presented no evidence in support of this claim. The Supreme Court has previously ruled that such a claim has no merit in the absence of evidence of purposeful racial discrimination or selective enforcement against the defendant in his case. *Stephens v. State*, 265 Ga. 356 (456 SE2d 560) (1995); *Cain v. State*, 262 Ga. 598 (422 SE2d 535) (1992). In the absence of any evidence to support the claim, the trial court

correctly denied the motion.

5. Since Cody provided no argument or citation of authority in support of his remaining enumerations of error, they are deemed abandoned. Court of Appeals Rule 27 (c) (2).

### Case No. A96A1121

6. Simpson claims the evidence was insufficient to support his conviction because it demanded a finding that he was entrapped.

We disagree. Although Simpson gave testimony at trial which arguably raised the defense that his conduct was induced or solicited by the informant and that he had no predisposition to commit the crime, there was evidence which contradicted his assertion of entrapment. See OCGA § 16-3-25. Simpson gave a statement to the police admitting he intended to purchase some amount of cocaine from the undercover detective. The undercover detective's testimony provided additional evidence of Simpson's predisposition to commit the crime and willing participation in it. The evidence did not demand a finding of entrapment. *Smith v. State*, 206 Ga. App. 138, 139 (424 SE2d 371) (1992).

The evidence was sufficient for a rational trier of fact to find Simpson guilty beyond a reasonable doubt. *Jackson v. Virginia*, supra.

7. In his last four enumerations of error, Simpson claims the trial court erroneously excluded the admission of certain documentary evidence.

While cross-examining the arresting detective, Simpson's defense counsel attempted to introduce a search warrant application and search warrant which had previously been issued to conduct a search of the informant's residence in an unrelated drug investigation. After the detective stated he could identify the documents and was familiar with the search of the informant's residence, defense counsel tendered the documents for admission. In addition to other objections, the prosecutor claimed the documents were inadmissible because they contained hearsay. The trial court ruled the documents were inadmissible because they contained hearsay statements by other persons but held defense counsel could question the detective about his personal knowledge of the prior search. There was no error in sustaining the hearsay objection.

The record reflects that, while the jury was out of the courtroom during a break in defense counsel's cross-examination of the detective, a discussion ensued over whether defense counsel could introduce three additional documents during the continuing cross-examination. Defense counsel intended to introduce a copy of the informant's previous federal indictment and conviction on a drug

charge and the negotiated plea agreement he entered into with federal authorities on those charges. Defense counsel stated the documents would be offered to show the informant's knowledge and experience in the drug trade. During a proffer made out of the jury's presence, the detective testified he was unable to identify any of these documents. Although the trial court ruled the documents could not be admitted through cross-examination of the detective, the judge stated defense counsel could question the detective about his personal knowledge of the informant and that defense counsel could call the informant, whose identity was known, to question him about the documents. Without reaching any conclusion as to the relevance of the documents (see *Simmons v. State,* 174 Ga. App. 171, 177-178 (329 SE2d 312) (1985)), the trial court did not err by refusing to admit the documents during cross-examination of a witness who had no knowledge of the documents. *Venable v. State,* 203 Ga. App. 517, 518 (417 SE2d 347) (1992).

*Judgments affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED AUGUST 12, 1996.

*Wayne L. Burnaine,* for appellant (case no. A96A1120).
*Edwin J. Wilson,* for appellant (case no. A96A1121).
*Daniel J. Porter, District Attorney, Dan W. Mayfield, Assistant District Attorney,* for appellee.